UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION (MASTER FILE) NO. 5:06-CV-316 - KSF

IN RE: AIR CRASH AT LEXINGTON, KENTUCKY, AUGUST 27, 2006

RELATES TO THE FOLLOWING CASES:

| | |
|---|---|
| Adams v. Comair, Inc., et al. | 5:07CV00339KSF |
| Anderson, et al. v. Comair, Inc., et al. | 5:07CV00270KSF |
| Dawson v. Comair, Inc., et al. | 5:07CV00300KSF |
| Fahey, et al. v. Comair, Inc., et al. | 5:07CV00126KSF |
| First Citizens Bank v. Comair, Inc., et al. (N. Kono) | 5:07CV00316KSF |
| First Citizens Bank v. Comair, Inc., et al. (T. Kono) | 5:07CV00317KSF |
| Harris v. Comair, Inc., et al. | 5:06CV00292KSF |
| Hebert v. Comair, Inc., et al. | 5:07CV00320KSF |
| Hunt v. Comair, Inc., et al. | 5:06CV00400KSF |
| Lykins v. Comair, Inc., et al. | 5:07CV00306KSF |
| Mallory v. Comair, Inc., et al. | 5:07CV00124KSF |
| McKee v. Comair, Inc., et al. | 5:07CV00322KSF |
| Moscoe v. Comair, Inc., et al. | 5:06CV00318KSF |
| Moscoe v. Comair, Inc., et al. | 5:07CV00331KSF |
| Towles v. Comair, Inc., et al. | 5:06CV00429KSF |
| Trimble v. Comair, Inc., et al. | 5:07CV00269KSF |
| Turner v. Comair, Inc., et al. | 5:07CV00326KSF |
| Washington v. Comair, Inc., et al. | 5:06CV00385KSF |
| Winters, et al. v. Comair, Inc., et al. | 5:07CV00127KSF |

\* \* \* \* \* \* \* \* \* \*

**OPINION AND ORDER**

\* \* \* \* \* \* \* \* \* \*

**I. INTRODUCTION**

This action stems from the crash of Comair Flight No. 5191 on August 27, 2006, as Flight No. 5191 was attempting to take off from Bluegrass Airport in Lexington, Kentucky, at approximately 6:10 a.m., en route to Atlanta, Georgia. The air crash resulted in the deaths of all passengers and crew members aboard that flight, with the exception of the plane's First Officer, James Polehinke, the sole survivor.

Plaintiffs bring this tort/breach of contract action against defendants Delta Air Lines, Inc. ("Delta"), Comair, Inc., Comair Aircraft, Inc., and Comair Services, Inc. (hereafter collectively "Comair"), asserting that the crash of Flight No. 5191 resulted from the negligence of the defendants and that the defendants breached implied warranties associated with the purchase of an airline ticket. Plaintiffs seek compensatory damages and punitive damages.

This matter is presently before the Court on the motion of defendant Delta for summary judgment on all claims asserted against it by the plaintiffs in the foregoing related cases. [DE #2120]. This motion is ripe for consideration.

## II.  FACTUAL BACKGROUND

Delta is an international, United States airline that has its principal place of business in Atlanta, Georgia. Comair is a regional, United States airline that has been in operation since 1977 and has its principal place of business in Erlanger, Kentucky. In the early 1980s, Delta and Comair began a business relationship that resulted in Comair becoming a wholly-owned subsidiary of Delta in 2000. However, Delta and Comair are separate entities; each has its own management, and each has its own set of policies and procedures. Further, each airline employs its own pilots, has separate fly sheets, separate flying routes, and operates from separate hubs (Delta's main hub is in Atlanta, Georgia, and Comair's main hub is in Erlanger, Kentucky).

The flight operations of Comair Flight No. 5191 were conducted by Comair employees in that the pilots of Flight No. 5191 (Captain Jeffrey Clay and First Officer James Polehinke) were Comair employees who were hired, trained, and managed by Comair employees. Additionally, Comair employees established the training and operational standards for Comair pilots.

## III.  DELTA'S MOTION FOR SUMMARY JUDGMENT

As grounds for its motion for summary judgment Delta asserts that there is no factual or legal basis for the claims asserted against it in regard to Comair Flight No. 5191 for the following reasons: (1) there is no evidence from which a reasonable jury could conclude that the conduct of

2

any Delta employee was negligent or that such negligence was a "substantial factor in causing" the crash of Flight No. 5191[1]; (2) under Kentucky agency law, Delta cannot be vicariously liable for the conduct of Comair employees in respect to Flight No. 5191; and (3) Delta cannot be liable for breaching contractual warranties since there are no such warranties associated with contracts for the performance of services.[2]

In response, Plaintiffs argue that although the pilots of Comair Flight No. 5191 and the people who trained them might not have been Delta employees, Delta exerted a tremendous amount of control over Comair's operations in that Delta decided where Comair would fly, what the ticket price would be, and how much money Comair would receive to operate. Therefore, plaintiffs submit that a genuine issue exists as to whether Comair employees qualify as apparent or actual agents of Delta.

Plaintiffs also assert that Delta and Comair participated in a common enterprise, that their operations and management are so closely intertwined and so closely coordinated that the successful operation of one is necessary for the successful operation of the other. Plaintiffs submit that there is no question that Delta and Comair acted "concurrently" and "in concert" with each other in carrying out a common enterprise; therefore, under Kentucky law, each is liable for the negligence of the other in carrying out that common enterprise.

Additionally, Plaintiffs submit that Delta's reliance on *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44 (Ky. 2008), is misplaced because (1) the holding therein is limited to the special

---

[1] Likewise, Delta also submits that since there is no evidence from which a reasonable jury could conclude that the conduct of any Delta employee was negligent or that such negligence was a "substantial factor in causing" the crash of Flight No. 5191, there is also no evidence that any Delta employee was grossly negligent; therefore, Delta is entitled to summary judgment on all claims for punitive damages against it based on the conduct of its employees.

[2] Delta also argues that it is entitled to summary judgment on plaintiffs' breach of warranty claims because in Kentucky "punitive damages are not available for breach of contract." *Pioneer Res. Corp. v. Nami Resources Co., LLC*, 2006 WL 1778318 *12 (E.D. Ky. June 26, 2006); KRS 411.184(4) ("In no case shall punitive damages be awarded for breach of contract.").

3

relationship between a franchisor and its franchisee, a relationship that is not present in this case, and (2) the basis for the complaint in *Papa John's* was an intentional tort committed by an employee of the franchisee, unlike the basis for the complaint herein; therefore, *Papa John's* is inapposite to the present action.

## Analysis

**A.     Summary Judgment Standard**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "*Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir.1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id*. at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving

party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (citations omitted).

**B.     The conduct of Delta's employees relative to Flight No. 5191**

Bluegrass Airport ("BGA") has both Delta and Comair flights, as well as other airlines that fly into and out of that airport. In order to properly assess Delta's argument that there is no evidence from which a reasonable jury could conclude that the conduct of any Delta employee was negligent or that such negligence was a "substantial factor in causing" the crash of Flight No. 5191, it is necessary to examine the conduct of Delta employees at BGA with respect to Flight No. 5191.

The deposition of Delta employee Mike Roberts, Delta's station manager for BGA in August of 2006, provides insight on this matter. At the outset, Mr. Roberts explained the relationship between Delta and Comair, as follows:

> Q.     Okay. Help me understand what this whole co-chair partner idea is about. And I recognize you can only tell me what you know, but what's your understanding of how does Delta – how are Delta and Comair related?
>
> A.     Comair is owned by Delta. It's a wholly-owned subsidiary. The other carriers, we do not own. Comair, though, much like the other carriers, they are a contracted service provider to Delta. They – they provide flying. We take care of the network end of it, the reservations network. That whole piece is operated very much like Delta, and they're basically a contracted service provider as far as providing crew and equipment to go from point A to point B.

<u>Deposition of Michael Roberts</u>, March 11, 2008, p. 21 (Exhibit 2 to <u>Delta Air Lines, Inc.'s Memorandum of Law and Exhibits to its Motion for Summary Judgment</u>).

In response to further questioning, Mr. Roberts also explained that, as part of the "network end of it," Delta determines the destinations to be served by a particular airport, the number of flights, the schedule for departures and arrivals, and establishes the ticket prices. <u>Id</u>. at p. 33.

**1.     The conduct of Delta employees with respect to Comair passengers**

Mr. Roberts explained that at BGA, Delta provides ticketing and boarding services to Comair passengers, meaning that a Delta employee accepts tickets from passengers for both Delta

5

and Comair flights, issues the boarding passes, and checks the boarding passes as the passengers exit the airport to board their planes. Id. at pp. 23-25. Thus, Comair passengers are initially processed by Delta employees.  Then, they are screened for security purposes by the United States of America, via the Transportation Security Administration ("TSA") officials.  If the passengers require assistance while in the airport, they are assisted by another entity, AirServ, Inc., which "is the contract holder for the sky cab and wheelchair" services at BGA. Id. at p. 29.  After clearing a security check and exiting the airport through the airport gate, Comair passengers are finally boarded onto the plane by Comair employees.  Id. at p. 25.

**2.     The conduct of Delta employees with respect to baggage of Comair passengers**

In conjunction with a Delta employee accepting the airline ticket for Comair passengers, the bags of Comair passengers are typically accepted by a Delta employee at the Delta ticket counter. Id. at p. 24.  The bags are then routed through the airport by a baggage-handling system operated by the airport authority.  During this process, the airport authority relinquishes control of the bags to the United States of America, via the TSA, for screening and security purposes.  After being screened, the TSA returns the bags to airport authority, and the bags are then routed to the ramp, where Comair baggage agents finally take possession of the bags and place them on the plane. Id. at 24-25.

The process and the procedures followed by Delta, Comair, and the airport, while receiving and processing passengers and their baggage into, through, and out of the airport and onto a plane, are somewhat convoluted, given the measures that necessarily have been implemented in recent years for safety and security purposes.  The legal issues attendant to this process, however, are not complicated or convoluted in terms of determining whether the actions of any of Delta's employees occurring during this process as they perform the scope of their duties as Delta's employees/agents were negligent and whether such negligence might be imputed to their employer, Delta.

6

It is significant that no passenger or other claimant herein has alleged that the conduct of any Delta ticket agent or gate agent caused or contributed to the crash of Flight No. 5191. Further, none of the plaintiffs herein has alleged that the manner in which Flight No. 5191 was scheduled, routed, or priced, contributed, in any shape, form, or fashion, to the airplane crash. In short, there is no allegation that any Delta employee failed to exercise reasonable care in the performance of his/her duty in any manner in respect to Flight No. 5191 on August 26, 2007. Likewise, there is no allegation that the actions of any Delta employee were a "substantial factor in causing" the crash of Flight No. 5191. See *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 91-92 (Ky. 2003). Consequently, for all of the foregoing reasons, the Court concludes that Delta is entitled to summary judgment on all claims that it is liable to the plaintiffs by reason of the direct negligence of its own employees.

**C.     Vicarious liability**

Delta also asserts that under Kentucky agency law, Comair cannot be deemed one of its agents; therefore, it cannot be vicariously liable for the conduct of Comair employees in respect to Flight No. 5191.

As previously stated, Comair is a wholly-owned subsidiary of Delta; however, that fact in and of itself does not necessarily mean that Comair should automatically be deemed an agent of Delta as a matter of law. There are only a handful of cases concerning the agency relationship or lack thereof between international and regional airlines, such as Delta and Comair in this case. See, e.g., *Stanford v. Kuwait Airways Corp.*, 648 F.Supp. 1158, 1161 (S.D.N.Y. 1986) ("KAC was not acting as Northwest's agent when it provided air transport to Stanford"); *Sponagle v. USAir Group*, 612 N.E.2d 395, 396 (Ohio Ct. App. 1992) ("what existed between Piedmont and Jetstream was no more than agreement between a major airline and a commuter airline to provide various services for each other.... Jetstream was to act as an independent contractor and not as

7

Piedmont's agent."); *Sahw v. Delta Airlines, Inc.,* 798 F.Supp. 1453, 1457 (D.Nev. 1992) ("The existence or non-existence of an agency relationship is a question of fact for the jury.").

Historically, the general rule in Kentucky has been that whether an agency relationship exists between two entities depends on the right of control one entity exercises over the other. See, e.g., *Ky. Unemployment Ins. Commission v. Landmark Cmty. Newspapers of Ky.*, 91 S.W.3d 575, 579-580 (Ky. 2002) ("in determining whether [an agency relationship exists], we have held that the chief criterion is the right to control the details of the work.") (internal quotation and citation omitted). However, in *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44 (Ky. 2008), the Kentucky Supreme Court recently revisited this general rule and concluded that it was too simplistic in a commercial setting when applied to two independent business entities. Specifically, the *Papa John's* case concerned a franchisor (Papa John's Int'l, Inc.), one of its franchisees (RWT), and one of RWT's employees, a pizza delivery driver who was accused of tortious activity committed against a customer who had ordered a Papa John's pizza from the franchisee (RWT) for delivery. In *Papa John's, supra,* the Kentucky Supreme Court adopted the holding in *Kerl v. Dennis Rasmussen, Inc.*, 682 N.W.2d 328 (Wis. 2004), and further developed the traditional agency law in Kentucky, with the following refinement:

> A franchisor is vicariously liable for the tortious conduct of the franchisee when it, in fact, has control or right of control over the daily operation of the specific aspect of the franchisee's business that is alleged to have caused the harm.

*Papa John's, supra,* 244 S.W.3d at 56.

Although the *Papa John's* case concerned a franchisor-franchisee relationship, the Kentucky Supreme Court did not indicate that its holding was limited to franchisor-franchisee business relationships. Consequently, this Court concludes that the holding in *Papa John's* is also instructive and applicable by analogy when assessing the business relationship between two, independent entities who are in a commercial relationship that is outside the context of a franchisor-

8

franchisee relationship. The Court is not persuaded by Plaintiffs' argument that *Papa John's, supra,* is limited to the franchisor-franchisee business relationship.

As seen from *Papa John's, supra,* and other agency law cases concerning the issue of vicarious liability, the key factor in determining whether one entity is an agent of another and hence, whether one entity may be vicariously liable for the actions or conduct of the other entity, is whether one entity has control over the other and the extent of that control. In *Papa John's, supra*, the Kentucky Supreme Court concluded that Papa John's International, Inc. was not vicariously liable for the actions of the pizza delivery driver employed by its franchisee, RWT, because "Papa John's had no control over the employee's intentional, tortious conduct" in that case. 244 S.W.3d at 56.

Thus, in the present action, in order to determine whether Comair should be deemed an agent of Delta and whether Delta is vicariously liable to Plaintiffs herein by reason of the alleged tortious conduct of Comair, it is necessary to consider the control, if any, that Delta exercised over Comair and, specifically, Delta's control or right of control over the alleged tortious conduct, *i.e.,* the negligence, of Comair employees, Captain Jeffrey Clay and First Officer James Polehinke, the pilot and co-pilot, respectively, of Comair Flight No. 5191 on August 27, 2006.

As previously stated, although Comair is a wholly-owned subsidiary of Delta, Comair has its own management and its own set of policies and procedures. Additionally, Comair employs its own pilots, has its own fly sheets, its own flying routes, and has its main hub in Erlanger, Kentucky, whereas Delta's main hub is in Atlanta, Georgia. The flight operations of Comair Flight No. 5191 were conducted by Comair employees (Captain Jeffrey Clay and First Officer James Polehinke) who were hired, trained, and managed by Comair employees who established the training and operational standards for Comair pilots.

The evidence of record in the present action also indicates that Delta did not own, operate or maintain the airplane designated as Comair Flight No. 5191 on August 27, 2006, and that Delta did not provide a dispatch release or any other information concerning the weather, airport, or other

details concerning Flight No. 5191. Furthermore, Delta had no legal control over Captain Jeffrey Clay and First Officer James Polehinke, the pilots of Comair Flight No. 5191 on August 27, 2006, in that Delta did not hire them, train them, pay them, supervise them, or otherwise manage them during the course of their duties as Comair employees. Delta has no right to fire or otherwise discipline Comair pilots for violating Comair's policies or procedures and/or aviation regulations.

In short, it is clear that Delta had neither the ability nor the right to control any of the operational aspects of Comair Flight No. 5191. Therefore, upon applying the rule of *Papa John's, supra,* to the facts and circumstances presented by the instant action, it is clear that Delta cannot be vicariously liable for the alleged tortious conduct of Comair and/or its employees, Captain Jeffrey Clay and First Officer James Polehinke, in respect to Flight No. 5191 on August 27, 2006. Consequently, for all of the foregoing reasons, the court concludes that Delta is entitled to summary judgment on Plaintiffs' claims that liability may be imputed to it as a matter of law because Comair is a Delta agent.

The Court is likewise unpersuaded by Plaintiffs' argument that Delta is vicariously liable to them because Delta and Comair participated in a common enterprise, resulting in each being liable for the negligence of the other in carrying out that enterprise. Kentucky has never recognized the doctrine of "common enterprise" *per se*. In support of their "common enterprise" argument, Plaintiffs rely on *Beauchamp v. Davis,* 217 S.W.2d 822 (Ky. 1948), and *Bybee v. Shanks*, 253 S.W.2d 257 (Ky. 1952); both *Beauchamp* and *Bybee* concerned the doctrine of "concurrent negligence," a doctrine completely different from "common enterprise." In *Bybee*, *supra,* the court summarized Kentucky's doctrine of "concurrent negligence," as follows: "where two or more tortfeasors by concurrent acts of negligence . . . inflict an injury, all are jointly liable." *Id.* at 259. The Court concludes that the doctrine of "concurrent negligence" is inapplicable to the present action because, to reiterate, there is no evidence that any Delta employee was negligent or that

such negligence was a "substantial factor in causing" the crash of Flight No. 5191. In the absence of any negligence by Delta, there can be no "concurrent negligence" between Delta and Comair.

**D.     Warranties concerning a contract for the performance of services**

Delta also contends that it is entitled to summary judgment on Plaintiffs' claims seeking recovery from it under a breach of contract/warranty theory since there are no such warranties associated with contracts for the performance of services.

**1.     Warranties under the Uniform Commercial Code ("UCC")**

It is well settled that the UCC warranty provisions do not apply to contracts regarding the rendering of services, as opposed to the sales of tangible goods. A case on point is *T-Birds, Inc. v. Thoroughbred Helicopter Serv. Inc.*, 540 F.Supp. 548 (E.D.Ky 1982), where plaintiff asserted a breach of implied warranty claim against a company that had overhauled the engine of a helicopter that subsequently crashed. The defendant moved to dismiss, arguing that a contract for repairs made to the helicopter involved no warranties, express or implied. The district court in the Eastern District of Kentucky agreed and granted the defendant's motion to dismiss under the following rationale:

> In the instant case, the predominant aspect of the contract was the rendition of services, i.e., a major engine overhaul of T-Birds' helicopter. Therefore, the UCC warranty provisions do not apply to this particular transaction. *See* 5 A.L.R. 4th 501 (1981).

Additionally, consistent with the foregoing holding, the Kentucky Court of Appeals recently had occasion to address the same issue in a security services contract and reached the same conclusion as the holding in *T-Birds, Inc.* In *United Servs. Auto. Ass'n v. ADT Sec. Servs.,* 241 S.W.2d 335 (Ky. Ct. App. 2006), the Kentucky Court of Appeals affirmed the dismissal of a breach of warranty and strict liability claim asserted in a security services contract. In *United,* the plaintiffs contracted with ADT for residential security and monitoring services. After ADT failed to detect a fire that largely destroyed their home, the plaintiffs sued ADT for breach of implied warranty. The

Kentucky Court of Appeals affirmed the dismissal of the breach of warranty claim, stating at follows:

> The Uniform Commercial Code is inapplicable as it applies only to contracts for the sale of goods and does not apply to a contract for services. *See* KRS 355.2-201 and KRS 355.2-105. The Code affords no basis for an action for breach of warranty.

241 S.W.3d at 341. Thus, it is clear that the UCC provides no avenue for a breach of warranty claim insofar as it concerns a contract for the rendering of services.

**2.     Warranties under Kentucky law**

Prior to the adoption of the UCC, Kentucky permitted a passenger to bring an action against a common carrier under either a contract theory or a tort theory. See *Southeastern Greyhound Lines v. Conklin*, 196 S.W.2d 961, 963 (Ky. 1946); *Illinois Central Railway Co. v. Winslow*, 84 S.W. 1175, 1176 (Ky. 1905); and *Howard v. Middlesborough Hosp. et al.,* 47 S.W.2d 77, 79 (Ky. 1932). However, the foregoing cases all pre-date Kentucky's adoption of the UCC in 1960. Subsequent to Kentucky's adoption of the UCC, whether a passenger is permitted to bring a claim against a common carrier under a contract theory depends on the terms of the contract itself and the statutory provisions of the UCC, as seen in *Williams v. Fulmer*, 695 S.W.3d 411 (Ky. 1985), a products liability action concerning a motorcycle helmet. In *Williams*, the Kentucky Court of Appeals affirmed the dismissal of plaintiff's breach of warrant claim against the defendant for the following reasons:

> A contract, commercial or otherwise, is limited by its terms, except to the extent that it must conform to statute. The U.C.C. is the only statute involved here.
>
> . . .
>
> Since the advent of the U.C.C., commercial sales law is statutory. We have no precedent for changing statutory law by court decision as we do for common law negligence rules.

695 S.W.3d at 413-14.

Subsequently, in *Real Estate Marketing, Inc. v. Franz,* 885 S.W.2d 921 (Ky. 1994), the Kentucky Supreme Court reiterated and further explained the holding in *Williams*, *supra*, and held that, based on the version of Kentucky's version of U.C.C., KRS 355.2-318, the plaintiff in *Real Estate Marketing* had no viable cause of action under a breach of warranty theory. In concluding its comments on plaintiff's breach of warranty claim, the Kentucky Supreme Court stated:

> The Majority of this Court is not prepared, as a matter of judicial policy, to extend the theory of a warranty implied in law beyond the kind of warranty statutorily created in Kentucky's version of the U.C.C. A step of this nature is a public policy to be decided by the legislature. We find no public policy to extend warranty protection in the U.C.C.

885 S.W.2d at 926.

Consequently, based on the *Williams* and *Real Estate Marketing* decisions, this Court concludes that Kentucky has declined to create common law rights that expand on the parameters of implied warranty established in the U.C.C. Therefore, based on the facts of this particular case, plaintiffs have no viable breach of warranty claim under Kentucky law against Delta, and Delta is entitled to summary judgment on plaintiffs' claims seeking to impose liability on Delta under a breach of warranty/contract theory.

## IV. CONCLUSION

For all of the foregoing reasons, the Court, being otherwise fully and sufficiently advised,

**IT IS HEREBY ORDERED** that:

1. The motion of defendant Delta Air Lines, Inc., for summary judgment on all claims asserted against it [DE 2120] by plaintiffs in the above cases is **GRANTED**.

2. Plaintiffs' claims for negligence, for vicarious liability, and for breach of warranties against defendant Delta Air Lines, Inc., are **DISMISSED**.

This 8th day of July, 2008.



**Signed By:**

*Karl S. Forester* KSF

**United States Senior Judge**